IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RAHIM B. MAJID ( | civil action # |
| AKA REGINALD D. JACKSON ( | |
| Plaintiff, ( | |
| VS. ( | |
| ( | |
| ROBERT MAY, WARDEN, JAMES T. ( | |
| VAUGHN CORRECTIONAL CENTER, ( | |
| DEPUTY WARDEN PHIL PARKER, ( | |
| DEPUTY WARDEN NATASHA HOLLINGSWORTH, ( | |
| TREATMENT ADMINISTRATOR STACEY HOLLIS, ( | |
| CLASSIFICATION LIEUTENANT MARK DAUM, ( | |
| COUNSELOR SUPERVISOR LARETTA EDWARDS, ( | |
| MASTER COUNSELOR THONGVONG, ( | |
| MASTER COUNSELOR KATHERINE SANDERS, ( | |
| In their individual and official capacities, ( | |
| Defendants, | |

### COMPLAINT FOR DECLARATORY JUDGMENT, MONEY DAMAGES AND INJUNCTIVE RELIEF

### NO JURY TRIAL DEMANDED

This is a complaint filed by Mr. RAHIM B. MAJID AKA REGINALD D. JACKSON pro se, a state prisoner confined at the James T. Vaughn Correctional Center in Smyrna Delaware Pursuant to Federal rules of civil procedure 3, for Declaratory judgment relief, damages, and injunctive relief under 28 U.S.C. 2201, alleging retaliation, due process and equal protection violations of the First, Sixth and Fourteenth Amendment of the UNITED STATES CONSTITUTION.

### JURISDICTION

Plaintiff brings this action pursuant to 28 U.S.C. 2201. This court has jurisdiction under 28 U.S.C. 1331, and 1343 (a) (3).

1

This court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. 1367.

SUMMARY OF THE ACTION

RAHIM B. Majid aka Reginald D. Jackson pro se, an inmate incarcerated by the DELAWARE DEPARTMENT OF CORRECTIONS (DOC), at the JAMES T. VAUGHN CORRECTIONAL CENTER ( J.T.V.C.C.), Smyrna Delaware, has been and continues to be subjected to unconstitutional mistreatments by the defendants.

1.   Seeking relief, plaintiff first forwarded a written letter to the Honorable Fred S. Silverman (plaintiffs sentencing judge) of the Delaware superior court in October 2014 to have clarified to DOC the nature in which his sentence is to be carried out. After Judge Silverman placed forth his order for Deputy Attorney General Mr. Jason Staib to contact DOC and attempt to get a straight answer as to when they think Mr. majid will be eligible for 11.Del.C.4217 application for sentence modification, DOC employees have subjected plaintiff to discrimination, retaliation, equal protection and due process violations.

- Retaliatory order from treatment administrator Stacey Hollis to remove plaintiff from the active roster of his anger management mental health group that the Delaware superior court ordered.

- Retaliating against plaintiff by illegally disqualifying him from the 4217 process, rendering him ineligible because of a class (A) felony. For 4217 purposes a class (A) felony is not a disqualifier per the 4217 statute and the BOP policy 3.32

2

- Antagonizing Mr. Majid by making threats to have him added to its institutional jerks list, disrespecting him by calling him a snitch for writing to the Delaware Superior court to inform the Judge of what DOC is doing to harm him.

- Knowingly treating the plaintiff different from similarly situated inmates who are put in for the 4217 when they become eligible for relief.

- Harming Mr. Majid by forcing a blind policy and custom that does not exist upon him, that not only excludes him from the 4217 process because of a class (A) felony, but also, increasing his sentence for PFDCF from 3yrs to 5yrs and his robbery 1st degree sentence from 2yrs to five yrs thereby increasing his sentence an extra 5yrs for 4217 eligibility purposes.

2.  Neither Mr. Majid's, exhaustion of institutional grievance system remedies, nor his efforts through the hand written letters to DOC treatment staff (Hollis, Edwards, Thongvong, Sanders and Daum) and upper management ( May, Hollingsworth, and Parker )or motions to his new Judge the Honorable Abigail M. LeGrow have been successful in his attempts to have these acts stopped. Many prisoner complaints, including complaints of unlawful conduct, fall outside of J.T.V.C.C.'s system of administrative remedies. When a grievance complains about improper motivation, conduct, actions, classification decisions, making request for information or asking for an investigation for staff misconduct, then the grievance is returned as unprocessed, completing the formal grievance process. Often, but not always, the inmate is directed to attempt to informally resolve the matter by writing a letter to a specified DOC employee.

3.  Ever since the Honorable Fred S. Silverman ordered (DAG) Jason Staib to make contact with DOC management about plaintiffs threshold eligibility date for 4217 in 2014, DOC employees and upper management, specifically the treatment team has become extremely angry and has and continue to show levels of disrespect, antagonism and the retaliatory acts to not afford plaintiff the true 4217 process by not following its own 3.32 policy has continued.

4.  Mr. Majid brings this 1983 civil rights action for declaratory and injunctive relief. Most immediately, he seeks preliminary and permanent orders preventing the defendants from retaliatory denial of the 4217 process by not treating plaintiff similar to other offenders who are granted judicial review, discriminatory, equal protection and due process violations by applying impermissible created policies and customs specifically to him and his case to exclude class (A) felons from a fair 4217 procedure, he also seeks final injunctive relief as to those matters and plaintiff also seeks damages.

<u>PARTIES</u>

5.  Mr. Majid is a citizen of the UNITED STATES and the STATE of DELAWARE, and at all times relevant to the events described in this complaint, has been in the custody of DOC at J.T.V.C.C, in the town of Smyrna, DELAWARE.

6.  At all times relevant to the events described in this complaint, defendant Robert May was employed by DOC as warden of J.T.V.C.C. He is being sued in official and individual capacity

7.  At all times relevant to the events described in this complaint, defendant Natasha Hollingsworth was employed by DOC as deputy warden at J.T.V.C.C. She is being sued in her official and individual capacity.

8.  At all times relevant to the events described in this complaint, defendant Phil Parker was employed by DOC as deputy warden at J.T.V.C.C. He is being sued in his official and individual capacity.

4

9.  At all times relevant to the events described in this complaint, defendant Stacey Hollis was employed by DOC as Classification officer II and or treatment administrator at J.T.V.C.C. She is being sued in her official and individual capacity.

10. At all times relevant to the events described in this complaint, defendant Mark Daum was employed by DOC as Classification Lieutenant at J.T.V.C.C. He is being sued in his official and individual capacity.

11. At all times relevant to the events described in this complaint, defendant Laretta Edwards was employed by DOC as master counselor and or counselor supervisor at J.T.V.C.C. She is being sued in her official and individual capacity.

12. At all times relevant to the events described in this complaint, defendant Thongvong was employed by DOC as counselor or master counselor at J.T.V.C.C. She is being sued in her official and individual capacity. Her last name is unknown to plaintiff.

13. At all times relevant to the events described in this complaint, defendant Katherine Sanders was employed by DOC as counselor or master counselor at J.T.V.C.C. She is being sued in her official and individual capacity.

<u>FACTS COMMON TO ALL COUNTS</u>

14. Plaintiff Mr. Majid has been in the custody of the DOC since January 13, 1998 and confined at J.T.V.C.C. since February 2001.

6

15. In September 2013 Mr. Majid filed a motion for a modification of his sentence in the Delaware Superior court of the State of Delaware.

16. October 8, 2013 The Honorable Fred S. Silverman denied the motion saying," this is a case for 11.DEL.C.4217, DOC knows how the defendant has been affected by the passage of time, so if the defendant wants reduction he must use 4217.

17. Plaintiff immediately submitted a request slip so that he could be seen by his DOC counselor who was at the time Mr. Johnson. Upon meeting with Mr. Johnson a request was made by plaintiff for 11.DEL.C.4217. Mr. Johnson informed the plaintiff that he would have to calculate the threshold time and confer with his DOC treatment team supervisor and after that he would inform the plaintiff as to the realities of the circumstances.

18. On October 28, 2013 plaintiff received a letter from counselor Johnson explaining that he will be deemed ineligible for 4217 and he recommended for plaintiff to file a motion for a commutation of sentence to the board of pardons.

19. While walking to lunch during the first week of November 2013 plaintiff saw his former DOC counselor Mrs. Laretta Edwards and requested to have a word with her. She responded by saying " I don't know about that because I am angry with you for asking counselor Johnson to submit a modification on your behalf, you can' t be asking people to do that for you, especially new and inexperienced counselors".

20. Counselor Edwards went on to say that " we don't put in modifications for people who have class (A) felonies Mr. Majid , so I would suggest that you make an attempt at another avenue".

7

21. When plaintiff questioned what the problem was with requesting for his DOC counselor to initiate the 4217, counselor Edwards responded and said " you will never get a 4217 as long as I am employed here and as long as I have anything to do with it". Counselor Edwards went on to say "besides we don't put in 4217 for violent class (A) felons like you ".

22. March 5, 2014 plaintiff wrote a letter to the Honorable Fred S. Silverman to explain that the DOC is unwilling to submit a 4217 on his behalf by illegally disqualifying him from his opportunity of judicial review by way of 4217 because of a class (A) felony conviction.

23. June 20, 2014 Judge Silverman requested for the Deputy Attorney General Jason Staib to contact DOC and to find out why the plaintiff is being denied an application for 4217 and please have them explain when they think the plaintiff will be eligible.

24. On July 1, 2014 the (DAG) responded to the order of Judge Silverman and informed him that after calculating the sentence, DOC has determined that plaintiff will be eligible for judicial review on January 13, 2021 for the purpose of the eligibility for 11.DEL.C.4217.

25. Now having a clear date that DOC and DOJ said that they will stick with for 4217, plaintiff started communicating with his DOC counselors at every available opportunity in hopes of keeping all parties aware of the anticipated January 13, 2021 application for the 4217.

26. APRIL 5, 2017 while plaintiff was meeting with his DOC counselor Mrs. Hall in D-west building, plaintiff again made a request to have a 4217 application placed in on his behalf at his next scheduled classification. Counselor Hall informed plaintiff that he will not qualify due to a class (A) felony that will unfortunately not allow her to initiate the 4217 at the next classification, Plaintiff informed Mrs. Hall

that it was already determined by DOC and DOJ that the date for eligibility will be January 13, 2021. Counselor Hall had to leave for a conference and informed Mr. Majid that she will send him something in writing after she takes another look at some documents concerning eligibility.

27.  That same afternoon April 5, 2017 plaintiff received a letter from Mrs. Hall informing him that he was indeed disqualified from the 4217 because of a class (A) felony.

28.  After being informed that he will be deemed ineligible because of a class (A) felony, plaintiff began requesting to speak with DOC counselors Edwards and Hollis because of having known them for more than twenty years and the fact that he was more familiar with them. In 2018, 2019, 2020, and 2021 plaintiff had conversations with Hollis and Edwards requesting for them to assist with straightening out the misunderstanding so that he can be granted judicial review and possible relief.

29.  June 9, cr 10th, 2019 plaintiff had a conversation with treatment administrator Stacey Hollis and counselor supervisor Laretta Edwards about the 4217 as to whether or not they would be willing to support it or not. They informed plaintiff that he will not be supported because he took court action against DOC when he informed his judge that DOC has disqualified him from the 4217 process, plaintiff was also cautioned to tread lightly before he gets added to their " institutional jerks list".

30.   On or about June 22nd, 2021 counselor supervisor Edwards expressed that she will never support relief for a person who goes against DOC and even if she could she would not do so. She went on to say majid you went against the home team and you will never get a 4217.

31.  Knowing that the threshold time for eligibility was approaching for the scheduled January 13, 2021 4217 plaintiff started communicating with his new DOC counselor Mrs. Stevens in January 2021 about the 4217. Plaintiff wanted to start early because the 4217 can only be submitted at classification time

9

per BOP policy 3.32. Counselor Stevens informed Mr. Majid that she will go discuss the issue with her supervisors Edwards and Hollis to determine whether or not she will be able to submit the 4217.

32. After counselor Stevens met with her supervisors' she met with plaintiff in W-building yard in January 2021 and informed plaintiff that when she mentioned Mr. Majids' name to Hollis and Edwards they became extremely angry and informed her that she will be replaced by another counselor in the coming weeks. She was further ordered to not speak with the plaintiff again because he is trying to manipulate counselors to put a modification of sentence in on his behalf.

33. February 2021 counselor Brown was introduced as the plaintiffs' new DOC counselor. Plaintiff met in W-building yard on or about February 15 or 16 2021 with his new counselor and informed him that he has just become eligible for the 4217 and that he was pleased to have him as an advocate in hopes that we can get the 4217 done.

34. After going over the 4217 mandatory " check test list " counselor Brown informed plaintiff that he checked all the boxes and that the paperwork will be submitted at the May 2021 classification.

35. By the third week of February 2021 while walking through W-building yard counselor Brown informed plaintiff that after he spoke with his supervisors Hollis and Edwards he has been informed that he will be replaced by another DOC counselor and that he was given an order to not speak with Majid and further ordered to not do his 4217. Prior to his departure, Brown said " Majid I don't know what you could have possibly done to those women but as soon as I mentioned you, they became extremely angry and irate ". When plaintiff questioned what women Counselor brown was referring to, he responded " come on man you know who, Hollis and Edwards ".

10

36.   While standing in W-building yard on or around March, 17th 2021 plaintiff saw and spoke with deputy wardens Parker, Hollingsworth and classification Lt. Daum about the problems he is having with a change in counselor every time a 4217 is mentioned to his DOC counselors, Plaintiff explained that he has a 4217 scheduled for his next classification and needs help seeing it through. Deputy Warden Hollingsworth informed Majid to do the process and if it doesn't work than he should write her. Plaintiff was advised to seek help if dissatisfied with the results of the classification.

37.   March 2021 plaintiff was introduced to counselor Thongvong better known as counselor (T) as his new DOC counselor. After a brief discussion in W-buildings yard Mrs. T informed plaintiff that she has already heard all the chatter about the 4217 and she advised Plaintiff that we will begin discussing it sometime in late April 2021 so that it will be ready for the May 2021 classification.

38.   Plaintiff was pleased with the fact that his new counselor was already aware and willing to start the process in the next few weeks. Plaintiff was yet again blindsided when he saw counselor T on March, 20 or the 21st, and she informed him that she was instructed to not do the 4217 by her supervisors Hollis and Edwards and that she would soon be replaced by a new counselor sooner than later.

39.   On or around the last week of March 2021 Mrs. Sanders was introduced as Mr. Majids' new DOC counselor. On Monday April 12, 2021 Plaintiff was sent to counselor hall ( a meeting place for counselors and offenders ), to discuss how things would be moving forward with his case, Plaintiff was also informed that she would be his counselor for the remainder of his sentence as long as the two remained at Vaughn Correctional Institution.

40.   Counselor Sanders informed plaintiff that she would calculate his threshold time for eligibility for the 4217 and after that she advised that she would confer with her supervisors Edwards and Hollis to determine the procedures moving forward.

11

41.   April 2021 plaintiff received a letter from counselor Sanders informing him that there has been a mistake on her behalf and that plaintiff will not qualify for a 4217 due to not meeting the mandatory minimum for the four felonies and due to his class (A) felony.

42.  Mr. Majid wrote back to Sanders on April 16, 2021 to inform her that there has been a mistake with the calculation and to please recalculate the math to assure that the numbers are correct. Plaintiff also forwarded Sanders a copy of the order from Judge Silverman, with DOJ and DOC agreeing that January 13, 2021 would be the date for the threshold for eligibility for the 4217 to be submitted.

43.   On April 27, 2021 plaintiff received a letter from counselor Sanders informing him of a scheduled meeting at counselor hall on April 29, 2021 so that we can further discuss the 4217.

44.   On April 29, 2021 plaintiff went to counselor hall to meet with counselor Sanders and counselor T to discuss the 4217. Plaintiff was informed by counselors Sanders and counselor T that under title 11 they can't put a 4217 in for two reasons. The first reason is that DOC can't support a 4217 for a class (A) dangerous felon and you haven't reached the minimum mandatory for the four felonies and also we have been ordered not to do a 4217 for you, by our supervisors.

45.   When plaintiff questioned counselor Sanders as to why he was being discriminated and retaliated against for taking court action to clarify to DOC his threshold for eligibility under 11.DEL.C.4217, Plaintiff was informed that it is exclusively between him and their supervisors, for the reason of going against the DOC brass and snitching to a Judge.

46.   On May 13, 2021 plaintiff was classified for his annual yearly classification by counselor Foraker and Sgt. Ebwele who was the classification officer of W-building at the time. Plaintiff was classified

12

to remain in minimum status, continue work detail and to complete alternative to violence (AVP) group.

47. At the May 13, 2021 classification the plaintiff was suppose to have an application placed in on his behalf for the 4217 as it is only initiated at classification times. Plaintiff questioned counselor Foraker as to why it wasn't being done, she responded by saying, " that madness is between you, Hollis and Edwards so please keep me out of it ".

48. May 24, 2021 plaintiff wrote a detailed appeal to warden May regarding the events that transpired leading up to and during the May 13, 2021 classification. The appeal was met with no response.

49. Plaintiff informed warden May that his DOC counselors have been changed four times leading up to his May 13, 2021 classification as a punishment and a retaliatory act because he took court action to clarify to DOC upper Management ( Warden May, Deputy Warden Hollingsworth and Deputy Warden Parker), and treatment team (Hollis & Edwards) about his eligibility date for the 4217. In the same appeal plaintiff requested for warden May to exercise his power of veto to veto the classification that disqualified plaintiff from the 4217.

50. On the first week of June 2021 plaintiff saw warden May while he was walking through W-building yard and requested to have a word with him. Warden May said " I am aware of who you are and I already know what you want ". He went on to say " if it makes you feel any better I will have you informed that I am rolling in whatever direction my treatment team is rolling in".

51. Warden May went on to say that it is obvious that you don't have anything coming so keep up the good work and give it another try in a few years ".

13

52. At this point warden May has not responded to the appeal MR. Majid submitted to him on July 24, 2021 nor has he responded to the August 3, 2021 written letter concerning plaintiffs request for assistance in seeing his 4217 through, so that judicial review can take its course.

53. May 16, 2021-, June 1, 2021-, July 28, 2021-, and September 6, 2021 plaintiff sent written letters to the treatment administrator Stacey Hollis with the on- going complaints of retaliation, discrimination, due process and equal protection violations by not allowing plaintiff to have his application for 4217 filed using BOP policy 3.32 and the Del statute that does not disqualify class (A) felons and for taking court action to clarify to DOC that plaintiff is eligible for 11.DEL.C.4217. All written letters to the treatment administrator Hollis was meant with no response.

54. On July 16, 2021 plaintiff wrote a letter to deputy warden Parker explaining that he is being retaliated and discriminated against by DOC upper management (Warden May, Deputy warden Hollingsworth, Lt. Daum and Deputy warden Parker) and the entire treatment team, specifically, treatment administrator Hollis and counselor supervisor Edwards for practicing his First Amendment right to grieve and petition the court for redress. Mr. Majid informed Mr. Parker that he is being illegally disqualified from the 4217 as a punishment. The written letter to Deputy Mr. Parker was met with no response.

55. July 27, 2021 plaintiff sent a written letter to deputy warden Natasha Hollingsworth seeking her assistance with the 4217. Plaintiff informed her that he is being retaliated and discriminated against by her subordinates because of his exercise of his 1st Amendment right to petition the court for redress, by violating his due process and equal protection rights to be treated like every Delaware inmate who is granted the opportunity to submit an application for a 4217 when they become eligible. The letter written to deputy warden Hollingsworth was met with no response.

14

56. July 28, 2021 Mr. Majid wrote a letter to counselor supervisor Mrs. Laretta Edwards requesting for her to protect his equal protection and due process rights and to please stop retaliating and discriminating against him by disqualifying him from the 4217 process. Plaintiff informed her that her subordinates made it clear that they have been instructed to not file the application for the 4217 on plaintiffs' behalf by her and her supervisor Hollis.

57. August 3, 2021 Mr. Majid wrote a follow up letter to warden May seeking a straight answer as to whether or not he would use his power of veto to reverse the decision of the classification multi- purpose classification team or was he going to allow it to be the final decision. To date plaintiff has not gotten a response or a letter from warden May explaining what his position will be, besides his verbal admission that he is, " rolling in whatever direction his treatment staff is rolling in ".

58. July 2021 Mr. Majid submitted a motion to the Delaware Superior Court seeking to have his sentence explained and clarified to the DOC treatment staff for the second time in the past seven years as to the nature in which his sentence is to be carried out.

59. On September 29, 2021 the Honorable Abigail M. LeGrow issued an order for Deputy Attorney Generals Annemarie Puitt and Gregory Smith to contact DOC and find out why they are refusing to file an application for a 4217 on the defendants' behalf. Judge LeGrow also requested to be informed as to whether or not those reasons included not being presently eligible due to the length of time or due to the nature of his sentence.

15

60. On the morning of October 19, 2021 plaintiff was sent to counselor hall to meet with his DOC counselor Mrs. Sanders. Upon arrival Mr. Majid was informed that counselor Sanders would begin the paper work for his 4217 application for reduction of his sentence.

61. Plaintiff was informed by counselor Sanders that she will not be able to support his sentence reduction, because DOC cannot support early release for class (A) felons. Upon that counselor Sanders informed plaintiff that she has to get the paper work done so that she can present it to her supervisors for their decision, approval or disapproval in the case.

62. While waiting for the due process multi-disciplinary teams (MDT) hearing that the plaintiff is suppose to be present at, DOC upper management,(treatment administrator Hollis and counselor supervisor Edwards) and treatment team was having that hearing without the plaintiff being present. It is plaintiffs' due process right to be present in order to supply the board members with the necessary information to render a fair decision.

63. On October 20, 2021 exactly twenty four hours after the paperwork was submitted plaintiff was called to the search room to pick up legal mail from the Delaware Superior Court. In the documented order from the Delaware Superior Court, DOC upper management had communicated with (DAG) Greg Smith and informed him that DOC had mistakenly disqualified Mr. Majid from the 4217 process and has now made it available to him, however, his 4217 was submitted on October 19, 2021 and denied by the institutional (MDT) board and he will next be reviewed by the (IBCC) board for their recommendation as to whether or not they will be willing to support his early release or not. Plaintiff was informed by counselor Sanders that her supervisors are really pissed about this ordeal and would probably not be willing to support the application for early release. Treatment administrator Hollis, counselor supervisor Edwards,

16

counselors Sanders and Thongvong had the action done as a perfunctory formality just to get it over and done with.

64. Plaintiff was confused because it usually takes a few months for the classification to make its way through each institutional board.

65. Plaintiff wrote his DOC counselor Mrs. Sanders and questioned why he wasn't supported by her, why his 4217 was denied in twenty four hours and why was plaintiff being punished for exercising his right to grieve and petition the court? Plaintiff was advised by counselor Sanders to write her supervisor with any questions and concerns moving forward.

66. At this point Mr. Majid has Been appointed treatment administrator Stacey Hollis as his own personal DOC counselor, Plaintiff has exhausted his administrative remedies by filing grievances ( # 580998 , 581044, 563524) for the remedies he seeks in this verified complaint by grieving all of the relevant conduct and, for each grievance, either having it returned as unprocessed for seeking a remedy outside the prisons grievance system or appealing the grievance to its final solution. Additionally plaintiff has pursued each suggested informal resolution method outside the grievance system including writing to DOC upper management, treatment staff and to both of his, former and current Superior Court Judges the Honorable Abigail M. LeGrow and the Honorable Fred S. Silverman. Plaintiff has made contact with all the appropriate officials and all of this has meant absolutely nothing to this particular group of defendants'.

67. Defendants discriminatory and retaliatory actions, coupled with equal protection and due process violations continue to harm plaintiff. The actions of the defendants have started to cause Mr. Majid depression, daily fear of DOC officials, severe emotional distress and confusion as to what length and extent these defendants are actually willing to go to harm the plaintiff by

17

not giving him the fair opportunity to have the 4217 submitted and then be granted an MDT hearing followed by having his 4217 submitted to the Board of Parole like every other offender who has a 4217 submitted.

68. Defendant Robert May has authority over all of these defendants as the warden of James T. Vaughn Correctional Center.

69. The conduct of defendant warden Robert Mays' subordinates include retaliatory denial of the 4217 process by illegally disqualifying Mr. Majid while knowing that he qualified; discrimination against plaintiff by denying him access to the 4217 process when it is made available to every single Delaware inmate when they become eligible; equal protection violations for applying a custom and on-going policy that illegally disqualifies class (A) felons, when the denial of class (A) felonies is not a disqualifier for the purpose of 4217 and due process violations for not affording plaintiff an MDT hearing per DOC BOP policy 3.32.

70. Defendant Robert May (warden) has actual knowledge of the violations because of the appeal and grievances ( # 580998 and 581044 ) filed by plaintiff to make it abundantly clear of these violations, hand written letters and personal conversations plaintiff had with the warden May.

71. As to each violation and based on the facts alleged in the foregoing paragraphs in this complaint, defendant May either directed or failed to stop the violations and further conveyed his acquiescence to his subordinates- for example saying that " I am rolling in whatever direction my treatment staff is rolling in ".

72. Based on the timing and conduct of the discriminatory and retaliatory, due process and equal protection violations, the comments of warden Robert Mays subordinates explaining the

18

purpose of the actions, defendant Robert Mays own statements and demeanor when discussing Mr. Majid, defendant Robert May ordered or acquiesced to the aforementioned conduct because of Mr. Majids exercise of his legal rights.

73.   Defendant Natasha Hollingsworth as deputy warden has authority over the entire treatment staff including treatment administrator Stacey Hollis.

74.   The conduct of deputy warden Natasha Hollingsworth subordinates include retaliatory denial of the 4217 process by disqualifying plaintiff while knowing that he qualified; discrimination by denying his access to the 4217 process when it is made available to every Delaware inmate when they become eligible; equal protection violations for knowingly applying a policy and custom to disqualify class (A) felons, when in fact it is not a part of the 11.DEL.C.4217 statute or the BOP policy 3.32 to disqualify class (A) felons and due process violations for not affording plaintiff an MDT hearing per BOP policy 3.32 and the due process of the 4217.

75.   Defendant deputy warden Hollingsworth had actual knowledge of these violations because of the hand written letter submitted on July 27, 2021 to her, the grievances plaintiff submitted, the direct conversations plaintiff had with her or because of her direct involvement or participation in the acts.

76.   As to each violation, and based on the allegations in the foregoing paragraph of this complaint, defendant Hollingsworth either directed or failed to stop the violations and further conveyed her acquiescence to her subordinates.

77. Based on the timing and conduct of the discriminatory, retaliatory, due process and equal protection violations, the comments of Hollingsworth subordinates explaining the purpose of

19

the actions, her demeanor, defendant Hollingsworth ordered or acquiesced to the aforementioned conduct because of Mr. Majids exercise of his legal rights.

78. Defendant deputy warden Parker has authority over the entire treatment staff including treatment administrator Stacey Hollis.

79. The conduct of deputy warden Parker subordinates include retaliatory denial of the 4217 process by disqualifying plaintiff while knowing that he qualified; discrimination against plaintiff by denying his access to the 4217 when the process is readily made available to every Delaware inmate when they qualify under truth in sentencing (TIS), equal protection violations for applying a policy and custom that illegally disqualifies class (A) felons and due process violations for not affording plaintiff an MDT hearing,  and the due process of the 4217 per its own BOP policy 3.32.

80. Defendant deputy warden Parker had actual knowledge of the violations because of a hand written letter to him on July 16, 2021 grievances filed and the direct conversation plaintiff had with him, or because of his direct involvement or participation.

81. As to each violation and based on the alleged acts in the foregoing paragraphs of this complaint, defendant Parker either directed or failed to stop the violations and further conveyed his acquiescence to his subordinates.

82. Based on the timing and conduct of the discriminatory, retaliatory, due process and equal protection violations, the comments of deputy warden parker subordinates explaining the purpose of the actions, his demeanor, defendant Parker ordered or acquiesced to the aforementioned conduct because of Mr. Majids exercise of his legal rights.

20

83. Defendant treatment administrator Stacey Hollis has authority over counselor supervisor Laretta Edwards and the entire treatment staff, as their supervisor.

84. The conduct of treatment administrator Stacey Hollis in ordering her subordinates to retaliate against plaintiff by denying his access to participate in the 4217 process; discrimination against plaintiff by denying his access to the 4217 process when it is made available to every Delaware inmate sentenced under truth in sentencing (TIS) when they become eligible; equal protection violations for applying a policy and custom to disqualify class (A) felons, when in fact a class (A) felony is not a disqualifier nor is it a part of the 4217 statute or BOP policy 3.32 to disqualify class (A) felons, and due process violations for not affording plaintiff an MDT hearing and the due process of the 4217.

85. Defendant treatment administrator Stacey Hollis had actual knowledge of the violations because of the change in plaintiffs DOC counselor four times leading up to his classification, the order that she gave her subordinates Brown, Stevens, Foraker, Thongvong and Sanders to disqualify plaintiff from the 4217 process, failure to acknowledge the agreement between DOC and DOJ that January 13, 2021 would be the date determined for the threshold of eligibility for the 4217, hand written letters from plaintiff, grievances and personal conversations shared between her and plaintiff and the direct and indirect involvement she had in the entire process.

86. As to each violation and based on the allegations in the foregoing paragraphs of this complaint, Defendant Hollis directed and failed to stop the violations and further conveyed her acquiescence to her subordinates.

21

87. Based on the timing and conduct of the discriminatory, retaliatory, due process and equal protection violations, the comments of Hollis subordinates explaining the purpose of the actions, Hollis comments explaining the purpose of the actions, her demeanor, defendant Hollis ordered and acquiesced to the conduct because of Mr. Majids exercise of his legal rights.

88. Defendant Classification Officer Lieutenant Mark Daum is a part of the Classification team as its DCC security officer.

89. The conduct of classification officer Lieutenant Daum in not ordering the treatment staff to stop applying a blind policy to the plaintiff that disqualifies him from the 4217 process; discrimination against the plaintiff by denying him the access to the 4217 process when it is made available to every Delaware inmate sentenced under truth in sentencing (TIS) who qualifies when they become eligible; equal protection violations for applying a policy to disqualify class (A) felons, when in fact a class (A) felony is not a disqualifier for the purpose of 11.DEL.C.4217 statute nor is it a part of the BOP policy 3.32 to disqualify class (A) felons, and due process violations for not affording plaintiff an MDT hearing and the due process of the 4217.

90. Defendant Daum had actual knowledge of the violations because of the change in plaintiffs DOC counselor four times leading up to his May 13, 2021 classification, failure to acknowledge the agreement that DOC represented to the DOJ that it will stick with January 13,2021 as the date it calculated that it would stick with as the threshold time for plaintiffs 4217, hand written letters to him from Mr. Majid grievances, and personal conversations shared between the defendant and plaintiff and his direct and indirect involvement in the entire process.

22

91. As to each violation and based on the allegations in the foregoing paragraph of this complaint, defendant Daum either directed or failed to stop the violations and further conveyed his acquiescence to his treatment staff and co-workers.

92. Based on the timing and conduct of the discriminatory, retaliatory, due process and equal protection violations, the comments of Daum treatment staff explaining the purpose of the actions, Daums comments explaining the purpose of the actions, his demeanor, defendant Daum knowingly acquiesced to the conduct because plaintiff Mr. Majids exercise of his legal rights.

93. Defendant counselor supervisor Laretta Edwards has authority over the counselors and the treatment team as their supervisor.

94. The conduct of counselor supervisor Edwards in ordering her subordinates to retaliate against the plaintiff by denying his access to the 4217 and judicial review; discrimination against plaintiff by denying his access to the 4217 process, when in fact it is made available to every Delaware inmate sentenced after 1990 when they become eligible; Equal protection violations for applying a policy and custom to disqualify class (A) felons when it is not a part of the 4217 statute nor is it part of the BOP policy 3.32 to disqualify class (A) felons; and due process violations for not affording plaintiff an MDT hearing and the due process of 4217.

95. Defendant counselor supervisor Laretta Edwards had actual knowledge of the violations because of the change in plaintiffs DOC counselor four times leading up to his MAY 13, 2021 classification, the order for counselors Brown, Stevens, Foraker, Thongvong and Sanders to disqualify plaintiff, failure to acknowledge the agreement between DOC and DOJ that January 13, 2021 was the date they agreed they would stick with for the threshold eligibility time for the

23

4217, the hand written letters, grievances, personal conversations plaintiff had with her and the direct and indirect involvement in the process.

96. As to each violation, and based on the facts alleged in the foregoing paragraph of this complaint, defendant Edwards directed and failed to stop the violations and further conveyed her acquiescence to her subordinates and supervisors.

97. Based on the timing and content of the discriminatory, retaliatory, due process and equal protection violations, the comments of Edwards subordinates explaining the purpose of the action, Edwards' comments explaining the purpose of the action, her demeanor, defendant Edwards ordered and acquiesced to the conduct because of Mr. Majids exercise of his legal rights. It is the duty of treatment administrator Stacey Hollis and counselor supervisor Laretta Edwards to explain, review and evaluate the work of staff; provide technical guidance to subordinates ensuring that services are provided to inmate/ client within the department/ institutional constraints; have three years experience in interpreting laws, rules, regulations, standards, policies and procedures; directly supervise and coordinate through their subordinates and to include but not be limited to conducting conferences with members of the treatment staff and conduct regular training sessions.

98. Those duties were not maintained because these defendants directed the violations based on the facts provided in this complaint, they failed to stop the violations and further conveyed their acquiescence to their subordinates- for example by ordering counselors Brown, Stevens, Foraker, Thonvong and Sanders to discriminate, retaliate and to violate plaintiffs due process and equal protection rights by disqualifying him and refusing to initiate 11.DEL.C.4217 on his behalf because he exercised his right to petition the court for redress.

24

99. From April 2021 until October 20th 2021 counselor Sanders was appointed as plaintiffs DOC counselor and responsible for taking care of all Mr. Majids institutional DOC affairs. Counselors' Thongvong and Sanders shared a desk together in counselor hall and because Thongvong is the more experienced of the two she was ordered to work hand in hand with Sanders in systematically carrying out the orders of their supervisors Hollis and Edwards.

100. The conduct of counselors Thongvong and Sanders in carrying out the orders and directives of their supervisors Hollis & Edwards in denying his judicial review by way of 4217; discrimination against plaintiff by excluding him from the 4217 process when it is made available to every Delaware inmate sentenced after 1990, when they become eligible, equal protection violations for applying a custom and policy to disqualify class (A) felons, when in fact, it is not a part of the 4217 statute or the Bureau of prison (BOP) policy 3.32 to disqualify class (A) felons; and due process violations for not affording plaintiff an MDT hearing and the due process in which the 4217 affords. Defendants Thongvong and Sanders had actual knowledge of the violations because of the continuous change in plaintiffs DOC counselors, the order from Hollis & Edwards for Counselors Brown, Stevens, Foraker, Thongvong and Sanders to disqualify plaintiff from the 4217 and the order from Judge Silverman where the DOJ and DOC agreed that they would stick with January 13, 2021 as the date for eligibility, The hand written letters, grievance and personal conversations plaintiff had with them attempting to explain the factual points for clarity.

101. As for each violation and based on the facts alleged in the foregoing paragraph of this complaint, defendants Thongvong and Sanders knowingly carried out the orders and directives of their supervisors and failed to stop the violations and further conveyed their acquiescence to their supervisors.

25

102.  Based on the timing and conduct of the discriminatory, retaliatory, due process and equal protection violations, the comments of Thongvong and Sanders explaining the purpose of the actions, their demeanor, defendants Thongvong & Sanders carried out the orders and directives of their supervisors and acquiesced to the conduct because of Mr. Majids exercise of his legal right.

103.  Plaintiff has had regular once a month meetings with a mental health clinician starting in 2019. In 2021 plaintiff was appointed Mrs. Rachel as his new mental health clinician that he would be meeting with once a month in W-building. While meeting with Rachel she informed plaintiff that she will be starting a mental health (anger management group) and would like for plaintiff to attend. Plaintiff agreed to take the group but to his surprise was removed from the active roster per treatment administrator Hollis.

104.  When plaintiff questioned why he was being removed from a class that he was never placed on notice for, he started being met with levels of disrespect and argumentation with Rachel and Hollis. Mental health clinician Rachel informed plaintiff that he has already missed a group and that treatment administrator Stacey Hollis has ordered her to drop plaintiff from the group. Plaintiff informed Rachel that each group has a two unexcused allowable absences for reasons such as this. Plaintiff informed Rachel that he needs the group for his classification so that it can increase his chances and opportunity to be granted a 4217 and judicial review. Plaintiff informed Rachel that he was never sent a notice nor was a notice posted in the building as they normally do when a group is about to begin. Rachel informed plaintiff that she cannot allow him in the group because she has already been ordered by Stacey Hollis to drop plaintiff from the

26

group. The actions of treatment administrator Stacey Hollis stepping out of her specific job duties usurping her authority and stepping into the plaintiffs medical (court ordered) treatment needs is a direct violation of the HIPPA act and an unreasonable and unlawful intrusion into the plaintiffs medical affairs and proof of the fact that these defendant will not stop at anything to retaliate against plaintiff. Plaintiff wrote a grievance to the mental health supervisor but the grievance was unprocessed and the supervisor never responded to the letter, (grievance # 578088).

## COUNT I

FIRST AND FOURTEENTH AMENDMENDT ( 42 U.S.C. 1983): RIGHT TO PETITION, RIGHT OF ACCESS TO THE COURTS AND DUE PROCESS.

(DEFENDANTS MAY, PARKER, HOLLINGSWORTH, HOLLIS, EDWARDS, DAUM, THONGVONG AND SANDERS)

105. Defendants retaliatory actions against the plaintiff did not advance legitimate penological goals such as preserving institutional discipline, or security.

106. Defendants May, Parker, Hollingsworth, Hollis, Edwards, Daum, Thongvong, and Sanders took adverse action against plaintiff when they discriminated, retaliated, violated equal protection and his due process rights.

107. Defendants May, Parker, Hollingsworth, Hollis, Edwards, Daum, Thongvong, and Sanders adverse actions against plaintiff caused plaintiff to suffer injury that chilled him/ a person of ordinary firmness from continuing to engage in 1st Amendment protected activity.

27

108.   Mr. Majid incorporates by reference the foregoing paragraphs of this complaint.

109. The actions of the defendants as described herein, include but is not limited to retaliation, discrimination, and injuring plaintiff by disqualifying him from 11.DEL.C.4217 because he exercised his right to grieve and petition the court for redress, to clarify to DOC upper management (treatment administrator Stacey Hollis, counselor supervisor Laretta Edwards) that he was not disqualified due to a class (A) felony as was there assertion. The defendants misled the Delaware Superior court by representing that they would stick with January 13, 2021 as the date for the threshold of eligibility that it would submit an application for 11.DEL.C.4217 on plaintiffs' behalf. While acting under the color of state law these defendants deprived Mr. Majid of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including his rights as guaranteed by the first and fourteenth Amendment.

COUNT II

DELAWARE CONSTITUTION, Article. 1 section 9 & section. 16: Right to petition, right of access to the court, and due process

( DEFENDANTS , MAY, PARKER, HOLLINGSWORTH, HOLLIS, EDWARDS, DAUM, THONGVONG, AND SANDERS).

110.  Mr. Majid hereby incorporates by reference the foregoing paragraphs of this complaint.

28

111. The actions of defendants as described herein, including but not limited to retaliating, discriminating, and injuring Mr. Majid by denying the due process because he exercised his right to grieve and petition the court for redress and to clarify to DOC the manner in which his sentence is to be carried out, depriving Mr. Majid his right under the DELAWARE CONSTITUTION ARTICLE.1 SECTION 9 & SECTION. 16.

## Count III

FIRST AND SIXTH AMENDMENT ( PURSUANT TO 28 U.S.C. 1983): RETALIATION

( DEFENDANTS, HOLLINGSWORTH, HOLLIS, EDWARDS, DAUM, THONGVONG, AND SANDERS )

112. Mr. Majid hereby incorporates by reference the foregoing paragraphs of this complaint.

113. By these defendants actions as alleged and described in this complaint retaliating against Mr. Majid and or acquiesced in furthering such retaliatory acts for his legal activities, defendants violated Mr. Majids First, Fifth and Six AMENDMENT Right as applied to the States through the Fourteenth AMENDMENT.

## COUNT IV

DELAWARE, CONSTITUTION, ARTICLE. I Section 9 & Section. 16: RETALIATION

(Defendants, HOLLINGSWORTH, HOLLIS, EDWARDS, DAUM, THONGVONG, AND SANDERS)

114. Mr. Majid hereby incorporates by reference the foregoing paragraphs of this complaint.

29

115. By their actions as alleged and described in this complaint these defendants retaliated against Mr. Majid and or acquiesced in furthering such retaliatory acts for his legal activities, defendants violated Mr. Majids rights to petition for redress of grievances and for seeking legal remedies as protected by the DELAWARE CONSTITUTION.

<u>COUNT V</u>

FOUTEENTH AMENDMENT ( 42 U.S.C. 1983 ): PROCEDURAL DUE PROCESS VIOLATION ( DEFENDANTS, HOLLIS, EDWARDS, DAUM, THONGVONG, AND SANDERS )

116. Mr. Majid hereby incorporates by reference the foregoing paragraphs of this complaint.

117. The defendants violated Mr. Majids procedural due process rights by knowingly denying him the due process of the 4217 by disqualifying him from it.

118. These defendants further violated the plaintiffs' rights by knowingly applying an illegal custom and policy that systematically excludes class (A) felons, when there doesn't exists any place in the 4217 Statute or the BUREAU of prison BOP policy 3.32 to exclude class (A) felons.

119. DOC under its BOP policy 3.32 has a nine question heavy weight questioner test that if passed grants DELAWARE inmates the opportunity to be examined under what it refers to as its (mandatory check list), and if the test is passed the offender gets granted the process and opportunity for Judicial review and possible reduction of sentence.

30

120.  Defendants failed to follow BOP policy 3.32 strictly and to apply its uniform standards to the plaintiff per its own BOP policy 3.32 and the mission statement that they are required to follow.

121.  These defendants conduct violates the due process clause of the UNITED STATES CONSTITUTION.

<u>COUNT VI</u>

ARTICLE 1, SECTION 9 OF THE DELAWARE CONSTITUTION: ADEQUATE PROCESS

(DEFENDANTS HOLLINGSWORTH, HOLLIS, EDWARDS, DAUM, THONGVONG, AND SANDERS)

122.  Mr. Majid hereby incorporates by reference the foregoing paragraphs of this complaint.

123.  The defendants disqualified Mr. Majid from the 11.DEL.C.4217 process because of a policy and long standing custom that illegally disqualifies class (A) felons from the process and or punish offenders who bring the law to their attention that they are not disqualified. The 4217 statute and the bureau BOP of prison policy 3.32 has no such subsection that specifically disqualifies class (A) felons as suggested by these DOC employees.

124.  Plaintiff has a protected liberty interest in the 11.DEL.C.4217 process as do all Delaware inmates who were sentenced after June 1990 does, when they become eligible.

125.  These defendants knowingly and consistently remained on their position to not follow its own BOP policy 3.32 and the 11.DEL.C.4217 statute that is abundantly clear on what it intended by Judicial review and the screening process. These defendants have what they refer to as its BOP policy 3.32 that come with a mandatory test check list that they are reluctant to strictly follow.

126.  These defendants knowingly prevent the Board of Parole from receiving offenders 4217 applications by systematically having the applications stopped at its MDT and IBCC institutional classification boards level, when the 4217 statute says that the application must be filed with the Board of Parole.

127.  These defendants conduct violates article I section 9 of the Delaware Constitution.

## COUNT VII

### FOURTEENTH AMENDMENT (42 U.S.C. 1983) EQUAL PROTECTION
### (DEFENDANTS HOLLINGSWORTH, HOLLIS, EDWARDS, DAUM, THONGVONG AND SANDERS)

128.  Mr. Majid hereby incorporates by reference the foregoing paragraphs of this complaint.

129.  Mr. Majid has been and continues to be treated differently than similarly situated inmates by the defendants because he has a class (A) felony conviction, and because he practiced his first Amendment right to grieve and petition the court for redress. Mr. Majid asserts that he is similarly situated like State V. Nikerray  Middlebrook (9608015635) 2020, State V. Brandon Kasinath (1503014277) 2020, State V. Corey Barber 2020, State V. Shaun Carpenter 2020, and State V. Walls Where these defendants reached eligibility, had identical risk assessment scores, served half their sentences and the minimum mandatory portions, were rehabilitated, educated and no longer a threat to themselves or society and through them DOC has Shown what they are willing to support for an application for 11.DEL.C.4217 to be placed in on their behalf and granted.

32

130.  The actions of these defendants, as described herein, while acting under the color of state law, has

deprived Mr. Majid of his rights to the equal protection of the law, in violation of the FOURTEENTH

AMENDMENT.

<u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiff RAHIM B. MAJID aka REGINALD D. JACKSON respectfully request that this

HONORABLE COURT enter judgment in his favor and against the defendants, and that this COURT

further:

a.  Declare that the acts set forth herein are in violation of MR. Majids rights under the UNITED

STATES and the CONSTITUTION and laws of DELAWARE;

b.  Order appropriate declaratory and injunctive relief, including appropriate orders directing: (1)

that DOC treatment staff, specifically HOLLIS and EDWARDS to afford plaintiff the real

11.DEL.C.4217 using the specific rules of the statue when considering the application allowing it

to be reviewed by the Parole Board; (2) That the DOC treatment team stop applying the custom

and impermissible policy that disqualifies class (A) felons; (3) That the plaintiff be afforded his

due process of being present at MDT board hearing per BOP policy 3.32; (4) That DOC

treatment staff strictly follow its own BOP policy 3.32 and the Delaware 4217 statute when

deciding plaintiffs 4217, or to change its 3.32 policy all together; (5) that DOC treatment staff

present the 4217 application to the Delaware Board of Parole per the 4217 statute; (6) That

DOC employees be prohibited from the retaliatory acts against Mr. Majid; (7) And a temporary

restraining order on HOLLIS and EDWARDS preventing them from being involved in any

decision that involves Mr. Majids classifications, treatment and applications for relief.

c.  Award Mr. Majid nominal, punitive and compensatory damages.

33

d.  Award Mr. Majid attorney fees, expenses and the cost associated with this action under 42

U.S.C. 1988 and as otherwise allowed by law; and

e.  Please grant Mr. Majid any other relief that this Court deems just and appropriate.

March 24, 2022

Rahim B. Majid Pro se

Aka Reginald D. Jackson

Sbi # 00265211

James T. Vaughn Correctional Center

1181 Paddock Road

Smyrna, De 19977

34