IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

RAHIM B. MAJID,                                :
a/k/a Reginald D. Jackson                      :
                                               :
            Plaintiff,                         :
                                               :
      v.                                       : Civil Action No. 22-382-RGA
                                               :
ROBERT MAY, et al.,                            :
                                               :
            Defendants.                        :

Rahim B. Majid, James T. Vaughn Correctional Center, Smyrna, Delaware.
Pro Se Plaintiff.


**MEMORANDUM OPINION**


October 25, 2022
Wilmington, Delaware

**ANDREWS, U.S. District Judge:**

Plaintiff Rahim B. Majid, an inmate at James T. Vaughn Correctional Center in Smyrna, Delaware, filed this action on March 24, 2022, pursuant to 42 U.S.C. § 1983. (D.I. 1 at 27-32). Plaintiff filed a declaration on April 21, 2022, and a supplemental complaint on July 25, 2022. (D.I. 9, 13). Plaintiff appears *pro se* and proceeds *in forma pauperis*. He requests counsel. (D.I. 3). The Court proceeds to screen the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a).

## BACKGROUND

Plaintiff has been in DOC custody since January 13, 1998. (D.I. 1 at 6). It is not clear how long of a sentence he is serving.[1] What is clear is that he would like to be released early through a process outlined in 11 Del. C. § 4217:

> (a) In any case where the trial court has imposed an aggregate sentence of incarceration at Level V in excess of 1 year, the court shall retain jurisdiction to modify the sentence to reduce the level of custody or time to be served under the provisions of this section.
>
> (b) The court may modify the sentence solely on the basis of an application filed by the Department of Correction for good cause shown which certifies that the release of the defendant shall not constitute a substantial risk to the community or the defendant's own self.
>
> (c) Good cause under this section shall include, but not be limited to, rehabilitation of the offender, serious medical illness or infirmity of the offender and prison overcrowding.
>
> ....
>
> (f) Notwithstanding any provision of this section to the contrary, in the case of any offender who is serving a sentence of incarceration at Level V imposed pursuant to a

---

[1] Per the Delaware Supreme Court, his sentence is thirty-seven years, but the prison portion was suspended after twenty-seven years. *Jackson v. State*, No. 457, 2007 (Order) (Del. April 23, 2008). One of the convictions is for attempted first degree murder, which is a class A felony under Delaware law. There are other convictions, including possession of a firearm during the commission of a felony and robbery 1st, both of which also have a minimum-mandatory component to them.

conviction for any crime, the Court may order that said offender shall be ineligible for sentence modification pursuant to this section until a specified portion of said Level V sentence has been served, except that no offender who is serving a sentence of incarceration at Level V imposed pursuant to a conviction for a violent felony in Title 11 shall be eligible for sentence modification pursuant to this section until the offender has served at least $1/2$ of the originally imposed Level V sentence, and no offender who is serving a statutory mandatory term of incarceration at Level V imposed pursuant to a conviction for any offense set forth in Title 11 shall be eligible for sentence modification pursuant to this section during the mandatory portion of said sentence.

Plaintiff generally alleges that Defendants have refused to file a § 4217 application on his behalf for various reasons, including that one of his convictions is for a class A felony, and that he has infuriated the powers that be by filing motions in Superior Court in connection with his desire to have the DOC file a § 4217 application on his behalf. He generally asserts the refusal constitutes retaliation, due process, and equal protection claims in violation of the First, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and the Delaware Constitution. (D.I. 1). The Complaint contains seven counts against eight Defendants, as follows:

> Counts I and II, violations of the right to petition, right to access the courts, and right to due process under the First and Fourteenth Amendments and the Delaware Constitution against Warden Robert May, Deputy Warden Phil Parker, Deputy Warden Natasha Hollingsworth, Classification Officer and/or Treatment Administrator Stacey Hollis, Master Counselor and/or Counselor Supervisor Laretta Edwards, Classification Lieutenant Mark Daum, Counselor or Master Counselor Thongvong, and Counselor or Master Counselor Katherine Sanders;

> Counts III and IV, retaliation under the First, Fifth, and Sixth Amendments and the Delaware Constitution against All Defendants except May and Parker;

> Counts V and VI, due process violations under the Fourteenth Amendment and adequate process violations under the Delaware Constitution against all Defendants except May, Parker, and, for the Count V, Hollingsworth;

Count VII, equal protection violations under the Fourteenth Amendment against all Defendants except May and Parker.

## FACTS

The following facts are taken from the Complaint and assumed to be true for purposes of screening the Complaint. *See Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

Plaintiff alleges that in September 2013, he filed a motion for modification of his sentence in the Delaware Superior Court. (D.I. 1 at 6). In denying the motion, the Court stated, "this is a case for 11 Del. C. 4217," so if the defendant (here, Plaintiff) "wants a reduction he must use 4217." (*Id.*). Plaintiff's counselor at the time, Mr. Johnson (not a defendant), informed Plaintiff on October 28, 2013, that he was deemed ineligible for 4217 and recommended that Plaintiff file a motion for commutation of sentence to the Board of Pardons. (*Id.*). During the first week of November 2013, Plaintiff spoke with his former DOC Counselor Edwards, who told him she was angry with him for asking Johnson to submit a modification since Johnson was a new and inexperienced counselor. (*Id.*). Edwards told Plaintiff, "we don't put in modifications for people who have class (A) felonies . . . so I would suggest that you make an attempt at another avenue." (*Id.*). Edwards told Plaintiff he would never get a 4217 as long as she was employed at JTVCC and had anything to do with it. (*Id.*). She reiterated, "we don't put in 4217 for violent class (A) felons like you." (*Id.* at 7).

On March 5, 2014, Plaintiff wrote a letter to the presiding judge and explained that the DOC was unwilling to submit a 4217 on his behalf because of the Class (A) felony conviction and this illegally disqualified Plaintiff from his 4217 opportunity. (*Id.*).

3

The presiding judge had a Deputy Attorney General ask the DOC why Plaintiff was being denied a 4217 application and explain when Plaintiff would be eligible for one. (*Id.*). On July 1, 2014, the Deputy Attorney General advised the Court that the DOC had determined Plaintiff was "eligible for [4217] judicial review on January 13, 2021." (*Id.*).

On April 17, 2017, Plaintiff met with his counselor, Mrs. Hall (not a defendant), and requested that she make a 4217 application on his behalf. (*Id.*). The same day, Hall told Plaintiff orally and by letter that he did not qualify due to his Class (A) felony conviction, which would not allow her to initiate the 4217 application at the next classification. (*Id.* at 7, 8). Plaintiff had conversations with Edwards and Treatment Administrator Hollis in 2018, 2019, 2020, and 2021 and requested their assistance in "straightening out the misunderstanding" so that he could seek judicial review. (*Id.* at 8). When Plaintiff spoke to Edwards and Hollis on June 9 and 10, 2019, he was told the DOC had disqualified him from the 4217 process "because [Plaintiff] took court action against DOC when [Plaintiff] informed his judge that DOC had disqualified him from the 4217 process." (*Id.*). They cautioned Plaintiff to "tread lightly before he gets added to their 'institutional jerks list.'" (*Id.*).

From January 2021 through April 2021, Plaintiff went through a succession of counselors, each of whom was replaced after supervisors Hollis and Edwards were informed of Plaintiff's requests to his counselor(s) to put in a sentence modification on his behalf. (*Id.* at 7-11). Plaintiff's annual classification was held on May 13, 2021. (*Id.* at 11). He "was classified to remain in minimum status, continue work detail and to complete alternative to violence (AVP) group." (*Id.* at 11-12). When Plaintiff questioned

4

why the 4217 application was not filed on his behalf, he was told, "that madness is between you, Hollis, and Edwards so please keep me out of it." (*Id.* at 12).

Plaintiff wrote to  Warden May on May 24, 2021 and appealed the classification issue. (*Id.*).  May did not respond. (*Id.* at 12, 13).  Plaintiff saw May the first week of June 2021.  May told Plaintiff that he was "rolling in whatever direction my treatment team is rolling in," and "to keep up the good work and give it another try in a few years." (*Id.* at 13).  Plaintiff sent a follow-up letter to May on August 3, 2021, and received no response. (*Id.* at 14).

About June 22, 2021, Edwards indicated she would never support a person who goes against the DOC, Plaintiff "went against the home team," and he would never get a 4217. (*Id.*).  At some point, Plaintiff asked why he was being discriminated and retaliated against for taking court action to clarify his 4217 threshold eligibility.  He was informed that it was "exclusively between [Plaintiff] and [the] supervisors, for the reason of going against the DOC brass and snitching to a judge." (*Id.* at 11).

Plaintiff wrote to Hollis on May 16, June 1, July 28, and September 6, 2021, complaining of retaliation, discrimination, due process and equal protection violations. (*Id.* at 13).  She did not respond. (*Id.*).  Plaintiff wrote to Deputy Warden Parker on July 16, 2021, complaining of retaliation and discrimination by upper management, *i.e.*, May, Deputy Warden Hollingsworth, Classification Lt. Daum, and Parker, and the entire treatment team, specifically Hollis and Edwards, for practicing his First Amendment right to grieve and petition the court for redress. (*Id.*).  Parker did not respond to the letter. (*Id.*).  Plaintiff wrote to Hollingsworth on July 27, 2021, sought her assistance with the 4217, and informed her that he was retaliated and discriminated against by her

5

subordinates because he exercised his First Amendment right to petition the court for redress, thereby violating his right to due process and equal protection. (*Id.*). Hollingsworth did not respond to the letter. (*Id.*). Plaintiff wrote to Edwards on July 28, 2021, and asked her to protect his right to equal protection and due process and to stop retaliating and discriminating against him by disqualifying him from the 4217 process. (*Id.* at 14).

In July 2021, Plaintiff filed a motion "for the second time in the past seven years" with the Delaware Superior Court seeking "to have his sentence explained and clarified" to the DOC treatment staff. (*Id.*). On September 29, 2021, the presiding judge ordered two Deputy Attorneys General to contact the DOC to find out why the DOC was refusing to file a 4217 application on Plaintiff's behalf and to inform the judge whether the "reasons included not being presently eligible due to the length of time or due to the nature of [Plaintiff's] sentence." (*Id.*).

On October 19, 2021, Plaintiff met with Counselor Sanders. Sanders informed Plaintiff that she would begin the paperwork for the 4217 application for sentence reduction, that she did not support the sentence reduction because the DOC cannot support early release for class (A) felons, and that she would present the paperwork to her supervisors for approval or disapproval. (*Id.* at 15). She submitted the 4217 application on October 19, 2021, which was denied by the Multi-Disciplinary Team, but also needed to be reviewed by the Institution Based Classification Committee for its recommendation whether it would support Plaintiff's early release. (*Id.*). Plaintiff alleges that he had a right to attend a multi-disciplinary team hearing and present necessary information to the board to render a fair decision, yet it was held without his

6

presence in violation of his right to due process. (*Id.*). The Complaint does not provide the date of the hearing.

On October 20, 2021, Plaintiff received a Superior Court order that recited that the DOC had stated that it mistakenly disqualified Plaintiff from the 4217 process but had then made it available to Plaintiff. (*Id.*). Sanders informed Plaintiff that her supervisors were displeased with the order and probably would not be willing to support the application for early release. (*Id.*). Plaintiff alleges that Hollis, Edwards, Sanders, and Counselor Thongvong had the 4217 process done as a perfunctory formality to "get it over and done with." (*Id.* at 15-16). Plaintiff wrote to Sanders and asked why he was being punished for exercising his right to grieve and petition the court and she advised him to write to her supervisors with any questions and concerns moving forward. (*Id.* at 16). Hollis is now Plaintiff's personal DOC counselor. (*Id.*).

Plaintiff seeks compensatory damages and declaratory and injunctive relief.

## SCREENING OF COMPLAINT

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013). *See also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93

7

(2007).  Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

A complaint is not automatically frivolous because it fails to state a claim.  *See Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020.   "Rather, a claim is frivolous only where it depends 'on an "indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario.'"  *Id*.

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions.  *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§1915 and 1915A, the Court must grant Plaintiff leave to amend his complaint unless amendment would be inequitable or futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  A plaintiff must plead facts sufficient to show that a claim has substantive plausibility.  *See Johnson v. City of Shelby*, 574 U.S.10 (2014).  A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted.  *See id*. at 11.

8

A court reviewing the sufficiency of a complaint must take three steps:  (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief.  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

## DISCUSSION

**Supplemental Complaint**.  Plaintiff filed a supplemental complaint (D.I. 13) on July 25, 2022.  The supplemental complaint raises a First Amendment claim for failing to allow Plaintiff the right to practice his religion.  The claim occurred during a timeframe after the filing of the original complaint and contains facts unrelated to the claims in the original complaint.  Plaintiff's remedy is to file a new case.  The supplemental complaint will be stricken.

**Eleventh Amendment**.  The Complaint raises claims against Defendants in their individual and official capacities.  The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought.  *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54  (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974).  "[A] suit

against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted).   Accordingly, § 1983 claims for monetary damages against a state, state agency, or a state official in his or her official capacity are barred by the Eleventh Amendment.

James T. Vaughn Correctional Center falls under the umbrella of the Department of Correction, an agency of the State of Delaware and, therefore, it is entitled to immunity under the Eleventh Amendment.  *See, e.g.*, *Evans v. Ford*, 2004 WL 2009362, *4 (D. Del. Aug. 25, 2004) (dismissing claim against DOC, because DOC is state agency and DOC did not waive Eleventh Amendment immunity).  Therefore, Defendants in their official capacities have immunity from monetary damages under the Eleventh Amendment.

Finally, the Complaint appears to seek both retrospective and prospective injunctive relief.  The Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law.  *See Ex parte Young*, 209 U.S. 123 (1908).  "This standard allows courts to order prospective relief, as well as measures ancillary to appropriate prospective relief." *Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (internal citations omitted).  The official capacity claims are dismissed to the extent that Plaintiff seeks retrospective injunctive relief from Defendants in their official capacities.

As discussed, the State of Delaware has neither consented to Plaintiff's suit nor waived its immunity.  Therefore, the official capacity claims against State Defendants

10

will be dismissed to the extent that Plaintiff seeks monetary damages and retrospective injunctive relief.

**Personal Involvement/Respondeat Superior**.  In reading the Complaint, Plaintiff appears to raise claims against May, Parker, and Hollingsworth based upon their supervisory positions.  It is well-established that there is no respondeat superior liability under § 1983.  *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016).  As currently pled, the Complaint fails to state claims against these supervisory officials, and they will be dismissed.  Plaintiff will be given leave to amend to cure the pleading deficiencies against the foregoing Defendants.

**Counts I and II, Right to Petition, Right of Access to the Courts, and Due Process**.  Plaintiff alleges that the adverse actions of May, Parker, Hollingsworth, Hollis, Edwards, Daum, Thongvong, and Sanders caused him "to suffer injury that chilled him/ a person of ordinary firmness, from continuing to engage in [First] Amendment protected activity." (D.I. 1 at 26-27). In a First Amendment right of access to the courts claim, a plaintiff must allege that the defendant's actions chilled the exercise of this right; in cases alleging retaliation, a plaintiff need not allege that defendant's conduct had a chilling effect. *See Anderson v. Davila*, 125 F.3d 148, 163 n.15 (3d Cir. 1997). The Complaint's allegations do not support the First Amendment claim.  He does not describe any chilling.  To the contrary, Plaintiff has pursued, and continues to pursue, relief by submitting grievances and by seeking assistance from State and Federal Courts.  Counts I and II will be dismissed for failure to state claims upon which relief can be granted.  Amendment is futile as to Counts I and II.

11

**Counts III and IV, Retaliation**.  Plaintiff raises retaliation claims against Hollingsworth, Hollis, Edwards, Daum, Thongvong, and Sanders.  In doing so, he refers to the First, Fifth, and Sixth Amendments.

It is a "fundamental principle of constitutional adjudication" that "[t]he limitations of the Fifth Amendment restrict only federal government action." The Fifth Amendment Due Process Clause applies to federal officials.  *See Hall v. Nisbit*, 2022 WL 910339, at *2 (3d Cir. Mar. 29, 2022) (citing *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008)).  No Defendant is a federal official.  Because the Fifth Amendment is inapplicable to state actors, and Plaintiff brings claims against state officials only, the Fifth Amendment claims necessarily fail and will be dismissed.

Similarly, the claims under the Sixth Amendment are not cognizable. The Sixth Amendment to the United States Constitution applies only in the criminal setting and is not applicable to the instant action.  *See Kirby v. Illinois*, 406 U.S. 682, 690 (1972) (holding that the Sixth Amendment guarantees only apply to "criminal prosecutions").  Therefore, it will be dismissed.

The Court turns to the retaliation claims that arise under the First Amendment.  A prisoner alleging retaliation must show: "(1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor" in the officials' decisions. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)).

Having reviewed the Complaint, I find that it adequately[2] alleges retaliation claims against Hollis and Edwards. It does not however, allege sufficient facts to state retaliation claims against Hollingsworth, Daum, Thongvong, and Sanders. The retaliation claims against Hollingsworth, Daum, Thongvong, and Sanders will be dismissed. Plaintiff will be given leave to amend the retaliation claims.

**Counts V and VI, Procedural Due Process.** The Complaint alleges Hollis, Edwards, Daum, Thongvong, and Sanders violated Plaintiff's procedural due process when Plaintiff was denied procedural due process in disqualifying him from the 4217 process. I take this to refer to the allegation that Plaintiff was not allowed to attend the Multi-Disciplinary Team hearing that disqualified him from the 4217 process. The hearing was held by Hollis, Edwards, and unspecified members of the treatment team. The 4217 hearing is similar to a parole hearing. It is well-established that that "once a state institutes a parole system, all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." *See Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980). Hence, Plaintiff has a substantive due process right in being treated fairly during the parole

---

[2] A constant refrain in the Complaint is that DOC would not file a § 4217 application for someone with a class A felony conviction. Plaintiff was such a person. Even assuming, as I do at screening, that Delaware law contains nothing making that a requirement, DOC's practice not to do so would not by itself be a federal constitutional violation. Overall, the Complaint only alleges retaliation as one of multiple reasons for DOC's decision not to file a § 4217 application on Plaintiff's behalf. I think that is sufficient at this time. I also note that most of the retaliation is alleged to be for something that happened in 2014, and it appears to be the case that Plaintiff was statutorily ineligible to file a § 4217 application before January 2021. Seven years is a long time to hold a grudge. But the pleading standard is to assume the allegations are "true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

process.  *See Jubilee v. Horn*, 975 F.Supp. 761, 764-65 (E .D. Pa. 1997), *aff'd*,151 F.3d 1025 (3d Cir. 1998).  In addition, it appears that Plaintiff had a procedural due process right to present his case.  *See Patten v. North Dakota Parole Bd.*, 783 F.2d 140, 143 (8th Cir.1986) (concluding that even though "no process was due" because the state "ha[d] not created a protected liberty interest in parole," inmates received "ample opportunity" to present their cases to the parole board).  As pled, Counts V and VI adequately allege procedural due process claims against Hollis and Edwards, but not Daum, Thongvong, and Sanders.  Plaintiff will be given leave to amend the procedural due process claim.

The Count also alleges due process violations by reason of the Defendants' failure to follow and/or abide by Bureau of Prisons Policy 3.32.  "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005). "[Section] 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). Federal and state regulations such as BOP policies do not give rise to a liberty interest. *See Rambert v. Beard*, 2012 WL 760619, at *13 (M.D. Pa. Mar. 7, 2012) (compiling cases). The due process claims based upon violation of BOP Policy 3.32 fail as a matter of law and will be dismissed.

**Count VII, Equal Protection**.  Plaintiff alleges Hollingsworth, Hollis, Edwards, Daum, Thongvong, and Sanders violated his right to equal protection because he "has been and continues to be treated differently than similarly situated inmates . . .  because

14

he has a class (A) felony conviction, and because he practiced his First Amendment right to grieve and petition the court for redress." (D.I. 1 at 31).

Plaintiff alleges that he is similarly situated to Nikerray Middlebrook, Brandon Kasinath, Corey Barber, and Shaun Carpenter, for all of whom DOC supported 4217 applications in 2020. (D.I. 1 at 32).[3] But he does not allege that each of them was convicted of a class A felony, and he does not allege that each of them did not exercise his First Amendment rights.

A plaintiff may bring an equal protection claim under two legal theories: (1) by alleging a defendant treated him differently from other similarly situated individuals because of his membership in an identifiable or protected class, such as race, religion, sex, or national origin,[4] *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 n.112 (3d Cir. 2016); or (2) in a "class of one," by alleging a defendant treated him differently from others similarly situated for arbitrary or irrational reasons, *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Phillips v. County of Allegheny*, 515 F.3d at 243. "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia, Pa.*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Norlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

---

[3] Under Delaware law, a class A felony requires a minimum sentence of fifteen years imprisonment. 11 Del. C. § 4205(b)(1). Kasinath's § 4217 application was filed and granted, but Kasinath was not convicted of a class A felony. *State v. Kasinath*, 2020 WL 4219402 (Del. Super. Ct. July 23, 2020).

[4] The Complaint repeatedly refers to discrimination and equal protection. Nowhere are there allegations that support a discrimination claim. Plaintiff's allegations more aptly describe an equal protection claim.

The Complaint does not contain any factual allegations that would make him a member of a protected class different from that of Middlebrook, Kasinath, Barber, and Carpenter.  Nor does it allege that he was treated differently from other inmates without any rational basis.  The equal protection claims will be dismissed.  Plaintiff will be given leave to amend the equal protection claims.

**Request for Counsel**. Plaintiff requests counsel on the grounds that he does not have the ability to present his case, he is unskilled in the law, the issues are complex and beyond his ability to pursue an effective investigation, the case may turn on credibility determinations, testimony of expert witnesses will be necessary, he cannot obtain and afford counsel on his own behalf, appointment of counsel would serve "the best interest of justice", and, his allegations, if proven, would establish constitutional violations.  (D.I. 3).  A *pro se* litigant proceeding *in forma pauperis* has no constitutional or statutory right to representation by counsel.[5]  *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993).  However, representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law.  *Tabron*, 6 F.3d at 155.

After passing this threshold inquiry, the Court should consider a number of factors when assessing a request for counsel.  Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the

---

[5]*See Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§ 1915(d) (now § 1915(e)(1)) does not authorize a federal court to require an unwilling attorney to represent an indigent civil litigant, the operative word in the statute being "request.").

merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony. *See Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56. The list is not exhaustive, nor is any one factor determinative. *Tabron*, 6 F.3d at 157.

At this juncture, it is far from clear that Plaintiff's claims have merit. Most of the claims will be dismissed, and Plaintiff will be given leave to amend. Therefore, the request for counsel will be denied without prejudice to renew.

## CONCLUSION

For the above reasons, the Court will: (1) deny without prejudice to renew Plaintiff's request for counsel (D.I. 3); (2) strike the supplemental complaint (D.I. 13); (3) allow Plaintiff to proceed with the retaliation and due process claims against Hollis and Edwards; (4) dismiss all other claims; and (5) give Plaintiff leave to amend the claims raised against May, Parker, and Hollingworth based upon their supervisory positions; the retaliation claims against Hollingsworth, Daum, Thongvong, and Sanders; the procedural due process claims against Daum, Thongvong, and Sanders; and the equal protection claims against all Defendants.

An appropriate Order will be entered.

17