IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RAHIM B. MAJID,<br><br>Plaintiff,<br><br>v.<br><br>TREATMENT ADMIN. STACEY HOLLIS, *et al.*,<br><br>Defendants. | ) | Civ. No. 22-382-CFC |

---

Rahim B. Majid, James T. Vaughn Correctional Center, Smyrna, Delaware – *Pro se* Plaintiff

Sehr Rana, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware – Counsel for Defendants Treatment Admin. Stacey Hollis, Counselor Supervisor Laretta Edwards, and Master Counselor Katherine Sanders

Aaron Christopher Baker, NEW CASTLE COUNTY OFFICE OF LAW, Wilmington, Delaware – Counsel for Defendants Treatment Admin. Stacey Hollis, Counselor Supervisor Laretta Edwards, and Master Counselor Katherine Sanders

**MEMORANDUM OPINION**

December 23, 2025
Wilmington, Delaware

**CONNOLLY, Chief Judge:**

On March 24, 2022, *pro se* Plaintiff Rahim B. Majid, who is serving a sentence for a state criminal conviction at James T. Vaughn Correctional Center (JTVCC) in Smyrna, Delaware, initiated this civil action by filing a complaint, alleging federal civil rights violations, pursuant to 42 U.S.C. § 1983. (D.I. 1.) The First Amendment retaliation and Fourteenth Amendment due process allegations in the complaint (D.I. 1) involving Defendants Treatment Admin. Stacey Hollis and Counselor Supervisor Laretta Edwards, and the First Amendment retaliation allegations in the amended complaint (D.I. 21) involving Defendant Master Counselor Katherine Sanders, constitute the operative pleading (*see* D.I. 23). Defendants now move for summary judgment in their favor. (D.I. 123.) Upon review and consideration, the Court will grant Defendants' motion for summary judgment, judgment will be entered for Defendants and against Plaintiff, and this case will be closed.

## I. BACKGROUND

In May 2021, while preparing an application for modification of sentence pursuant to 11 Del. C. § 4217 (4217 application) for Plaintiff, a JTVCC counselor, Defendant Sanders, assessed Plaintiff as ineligible for sentencing modification based on a misunderstanding that Plaintiff was still serving a mandatory portion of his

sentence. (*See* D.I. 124-1 at 123, 125.) The record reflects that Defendant Sanders began working at JTVCC as a counselor in February 2021, roughly three months earlier. (*See id.* at 159.) Defendants' responses to Plaintiff's interrogatories reflect that Defendant Sanders made this, albeit inaccurate, assessment in compliance with her training. (*See id.* at 129-34.) Per Defendants' admissions and affidavits, JTVCC treatment administrator, Defendant Hollis, and JTVCC counselor supervisor, Defendant Edwards, were not involved in this process. (*See id.* at 129-31, 140, 156-57, 207-08, 240-41.) Plaintiff, however, believes that Defendants Hollis and Edwards were involved, first by placing Plaintiff with an inexperienced counselor, and then by directing Defendant Sanders' assessment of Plaintiff's 4217 application. (*See* D.I. 1; D.I. 21; *see also* D.I. 126.)

Plaintiff believes that Defendants had a retaliatory motive in processing his 4217 application. (*See id.*) Plaintiff alleges that, prior to Defendant Sanders' assessment, Plaintiff wrote complaints and grievances, as well as letters, petitions and motions to the Delaware Superior Court, regarding his sentencing, how the JTVCC treatment team does not believe in rehabilitation, and how the JTVCC treatment team disqualifies or arbitrarily denies 4217 applications of prisoners with

Class A felony convictions.[1] (*See id.*) Plaintiff alleges this prompted judicial inquiry, and the record reflects that Delaware Superior Court Judge Fred S. Silverman issued an Order in June 2014, approximately seven years earlier, directing the Delaware Department of Justice (DDOJ) to advise the Court of whether the Delaware Department of Corrections (DDOC) believed Plaintiff would be eligible for 4217 sentence modification.[2] (*See* D.I. 124-1 at 106-07.)

Following Defendant Sanders' assessment of Plaintiff's 4217 application, Plaintiff filed a motion to review and clarify sentence with Delaware Superior Court Judge Abigail M. LeGrow, who ordered the DDOJ to respond to Plaintiff's motion to review and clarify sentence in September 2021. (*See* D.I. 124-1 at 170.)

---

[1] In support of Plaintiff's position that JTVCC will not recommend sentencing modification for prisoners with certain criminal convictions, even when the Delaware Code does not so prohibit, Plaintiff has submitted an affidavit by Anthony White, who attests that his JTVCC counselor advised him he was not eligible for 4217 sentence modification in 2022 based on his attempted first degree murder conviction, even though he had served more than half of his original sentence at that time. (*See* D.I. 22.) A copy of the counselor's response is included with the affidavit. (*See id.*) Plaintiff has also submitted copies of DDOC and JTVCC policies. (*See* D.I. 69.)

[2] Per DDOJ's response, the Delaware Code prohibits modification of a Level 5 sentence solely based on rehabilitation during the mandatory portion of the sentence, and it further prohibits modification of a Level 5 sentence for a violent felony conviction solely based on rehabilitation until one half of the original sentence has been served, rendering Plaintiff statutorily ineligible for sentence modification in 2014. (*See* D.I. 124-1 at 106-07.)

According to Defendant Sanders, she herself determined that she had erred in assessing Plaintiff's 4217 application, brought it to Plaintiff's attention, and submitted a new 4217 application on his behalf in October 2021. (*See* D.I. 124-1 at 160, 162-66.) Plaintiff believes that, absent Judge LeGrow's Order, Defendant Sanders would not have reassessed Plaintiff's 4217 application eligibility. (*See* D.I. 1; D.I. 21; *see also* D.I. 126.)

In October 2021, the Multi-Disciplinary Team (MDT) reviewed and considered the new 4217 application for Plaintiff prepared by Defendant Sanders. (*See* D.I. 124-1 at 162-66.) Defendant Sanders was part of the MDT, but Defendant Hollis and Edwards were not. (*See id.* at 130, 168, 207-08, 240-41.) The MDT held a hearing on the matter, for which Plaintiff was not present, which Plaintiff acknowledges was JTVCC's practice at the time and remains JTVCC's practice to date. (*See* D.I. 124-1 at 47-49.)

Upon review and consideration, the MDT did not recommend modification of Plaintiff's sentence, due to the nature of Plaintiff's offense of conviction and the underlying facts, his dismissal from anger management and My Brother's Keeper mentorship programs at JTVCC, and positive drug testing following completion of

a substance abuse treatment program at JTVCC.[3] (*See id.* at 168.) After the MDT made its recommendation, the Warden reviewed the application and declined to recommend modification of Plaintiff's sentence. (*See id.*)

In light of Plaintiff's First Amendment protected speech activities discussed above, Plaintiff believes that there was a retaliatory motive for the assessment and denial of his 4217 application. (*See* D.I. 1; D.I. 21; *see also* D.I. 126.) Plaintiff highlights the recent Order issued by Judge LeGrow prompted by Plaintiff's motion, and the related Order issued by Judge Silverman seven years earlier, as well as a number of positive factors that Plaintiff believes the MDT did not consider, including the many JTVCC treatment programs that Plaintiff has successfully completed. (*See id.*; D.I. 56-1 (copies of certificates of completion).)

## II. LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec.*

---

[3] Plaintiff asserts that Defendant Hollis was responsible for Plaintiff's dismissal from the anger management program, which Defendant Hollis denies. (*See* D.I. 124-1 at 137-38.) The record reflects electronic communications between Defendant Hollis and the mental health clinician in charge of the program, which support Defendant Hollis' position and not Plaintiff's position. (*See id.* at 216.)

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter, but rather, "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Where the burden of persuasion at trial would be on the non-moving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after which the burden of production shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an

assertion by "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the moving party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460-61.

The court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "[T]he facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true . . . ." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). If "there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Id.* at 1081 (internal quotation marks omitted). Conversely,

> Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is

> blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations, quotations, and alterations omitted).

## III. DISCUSSION

Upon review and consideration, the Court finds that the record of evidence could not lead a jury to reasonably find that Defendants Hollis, Edwards, and Sanders retaliated against Plaintiff, in violation of his First Amendment rights, or that Defendants Hollis and Edwards violated Plaintiff's Fourteenth Amendment due process rights.[4] First, the evidence of record reflects no personal involvement by Defendants Hollis and Edwards in the preparation of, or recommendation on, Plaintiff's 4217 application. Absent personal involvement, a defendant cannot be liable for § 1983 claims. "A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable." *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003), *as amended* (May 29, 2003). "Section 1983 will not support a

---

[4] The Court notes that, to the extent that Plaintiff seeks reversal or reconsideration of the MDT's 4217 application recommendation by way of this action, this request may be *Heck*-barred. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The Court cannot grant relief in a § 1983 action that would impact the duration of Plaintiff's sentence; a *habeas* petition is required to challenge the duration of Plaintiff's confinement. *See id.*

claim based on a *respondeat superior* theory of liability" alone. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981). Without more than Plaintiff's beliefs regarding their involvement, a jury could not reasonably infer from the record Defendants Hollis and Edwards' liability for any § 1983 claims asserted.

Next, the record lacks sufficient evidence from which any retaliatory motive for the preparation of, or recommendation on, Plaintiff's 4217 application can be reasonably inferred. To state a *prima facie* case of § 1983 retaliation, Plaintiff must allege that (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). In this case, there is no record evidence from which a rational jury could conclude that Plaintiff's speech activities motivated or influenced Defendant Sanders's initial determination that Plaintiff was ineligible for a 4217 sentencing modification. All evidence of record pertaining to Defendant Sanders' initial assessment of Plaintiff as ineligible for 4217 suggests that Sanders' initial assessment was merely erroneous. A jury could not reasonably infer that Defendant Sanders did more than act negligently here, which is not sufficient for § 1983 liability generally. *See Daniels v. Williams*, 474 U.S. 327, 331-34 (1986).

Regarding the MDT subsequently declining to recommend sentencing modification for Plaintiff, the record reflects that this declination was based on Plaintiff's lack of success with several JTVCC treatment programs, in addition to the nature of his conviction and the facts underlying it. At the outset, it does not appear from the record presented that a jury could reasonably infer that Plaintiff's First Amendment protected speech activities were a substantial or motivating factor for the MDT declining to recommend sentence modification, yet even if the recency of Judge LeGrow's Order were sufficient to circumstantially suggest retaliatory motive, *see Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016), Defendants have, in response, sufficiently established that the MDT would have declined to recommend sentence modification regardless, based on the legitimate grounds the they articulated. *See id.* (discussing the "same decision" defense to § 1983 retaliation claims); *see generally O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (recognizing limitations on inmates' constitutional rights imposed by valid penological objectives).

In sum, Plaintiff's mere beliefs regarding the motives for the denial of his 4217 application, and the involvement of Defendant Hollis and Edwards in his case, would not, without more, allow a jury to draw reasonable inferences in his favor. "Where the record taken as a whole could not lead a rational trier of fact to find for

the nonmoving party, there is no 'genuine issue for trial,'" and "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. The Court will grant Defendants' motion for summary judgment, and judgment will be entered in their favor. (D.I. 123.)

## IV. CONCLUSION

For the above reasons, the Court will grant Defendants' motion for summary judgment. (D.I. 123.)

An appropriate Order will be entered.